# William Partlow, Administrator, etc., v. Illinois Central Railroad Company.

1. Instructions—*Must be Contained in the Abstract.*—When a party bringing a case to the Appellate Court fails to copy the instructions complained of, or any that were given on either side in the abstract, the court will be entirely justified in declining to consider errors assigned upon them.

2. Railroads—*Speed of Trains.*—It is not negligence *per se* to run a train at a speed of forty or fifty miles per hour through an incorporated town when there is no ordinance regulating the speed of trains.

3. Negligence—*Omissions to Look for Trains.*—The jury should not be instructed that the omission to look and listen for the approach of a train is negligence *per se.*

4. Railroad Crossings—*Care in Approaching.*—When one approaches a railroad track and observes that there is nothing to obstruct his view, and that there are no other sounds to prevent hearing an approaching train, he may rationally conclude it is safe to cross, and in such case he will not be required to make a more particular examination.

**Memorandum.**—Action for personal injuries. Error to the Circuit Court of Coles County; the Hon. Edward P. Vail, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed November 4, 1893.

The opinion states the case.

Craig & Craig, attorneys for plaintiff in error.

Horace S. Clark, attorney for defendant in error.

Mr. Justice Wall delivered the opinion of the Court.

The plaintiff in error brought an action against the defendant in error for causing the death of the intestate. A trial by jury resulted in a verdict and judgment thereon for the defendant.

The intestate was fatally injured by a collision with a passenger train on defendant's road at a crossing in the village of Humbolt. The train was one of the fastest on the road and made no stop at this station. It was running forty to fifty miles an hour. It is undisputed that the whistle was sounded at the crossing a quarter of a mile north of that where the collision occurred, and according to the testimony of the train men there was no want of later signals by

whistle or bell of the approach of the train. The deceased and Hushong, his brother-in-law, were in a wagon approaching the road from the west. It was just at nightfall, though not very dark. Hushong escaped without serious injury. He testifies that as they approached the track, when about fifty yards from it, he and the deceased looked for trains; they did not stop and listen, but looked. At the point where they then were the view of the track northward whence the train was coming was obstructed by buildings and freight cars.

They did not discover the train until just as they reached the crossing. Their horses were blind. It is uncertain whether the team got upon the track or whether it was driven against the train, but as the horses, wagon and men were all found on the west side of the track it is quite probable the latter theory, which is not without support in the testimony, is the correct one.

The jury found the defendant not guilty, and found specially that the deceased did not exercise care, and that the defendant gave the necessary signals and was not guilty of want of care. There were other special findings as to probative or evidentiary matters, which, when taken together, are in support of those stated, as to the ultimate facts upon which the proper solution of the case depends.

We think the evidence justified these special findings that deceased did not exercise ordinary care and that there was no negligence on the part of the defendant. If the jury were right in the conclusions thus reached, or either of them, the general verdict for defendant was necessarily correct, and unless the jury were improperly guided by the instructions the judgment must be affirmed.

It is insisted that there is manifest and prejudicial error in the instructions.

The plaintiff in error has failed to copy the instructions complained of or any that were given on either side, in the abstract, and for this reason we would be entirely justified in declining to consider the point thus made. Miller v. Newell, 29 App. 192; Fenter v. T., St. L. & K. C. R. R., Ib. 250; Florez v. Brown, 27 App. 270.

We have, however, consulted the record and given the matter such examination as seems necessary to dispose of the question thus presented. The court gave the following at the request of the defendant:

1. In the absence of any proof of an ordinance limiting the speed of a railroad train through a city or village, the railroad company would have a right to run its trains through any such village or city at any rate of speed thought proper, consistent with the safety of its trains and passengers, and of persons rightfully upon its right of way at road crossings who were exercising ordinary care in crossing the railroad, and any person without ordinary care crossing such railroad and receiving any injury for the want of such care could not recover therefor on account of such speed alone.

2. That in the absence of any proof of a village ordinance such a rate of speed as is customary among railroad companies with their fast trains is not in itself negligence on the part of the railroad company.

We think no valid objection can be taken to the first instruction. It limits the right of the company to run at any rate of speed by the duty to care for the safety of passengers and of persons rightfully on the right of way.

The second may be criticised because it refers to "such rate of speed as is customary among railroad companies" as fixing a standard.

What is or is not customary in this respect is not the question, but we can not see that any harm could have been done by this instruction.

It merely amounted to this, that the rate of speed proved in the present case was not in itself negligence on the part of the company.

That is to say, the jury are not to infer negligence merely from the fact that the speed was forty or fifty miles per hour, as proved. It might be negligent or it might not, but it was not so necessarily. There was no municipal ordinance fixing the speed of trains when passing through the corporation.

It is urged that the court erred in giving the following:
" Every person is bound to know that a railroad crossing is
a dangerous place and he is guilty of neglect unless he
approaches it as if it were dangerous, and if the jury believe
from the evidence that the deceased, as he approached the
railroad track in the wagon, driven by his brother-in-law,
did not look or listen to ascertain if a train was coming and
observe all reasonable precaution to avoid danger, but on
the contrary, the team was driven directly onto the track
where the accident happened, without any steps being taken
by the deceased or his brother-in-law to ascertain if a train
was approaching, then the deceased was chargeable with
such negligence as precludes a recovery in this case, unless
the jury believe from the evidence that the servants of the
railroad company were guilty of gross negligence."

It is no doubt the well settled rule in this State that the
jury are not to be told that the omission to look and listen
for the approach of a train is negligence *per se.*

As a matter of argument it has been repeatedly said that
such omission in the particular case was negligent.

And it may be said that it is so usually or generally, though
not necessarily, in all cases.

This instruction would be erroneous within the rule were
it not for the clause " but on the contrary the team was
driven directly onto the track where the accident happened
without any steps being taken by the deceased or is brother-
in-law, to ascertain if a train was approaching."    We can not
understand how a man can be said to exercise ordinary care
at such a place when he uses no more than he would at a
place not dangerous, such as the crossing of an ordinary
wagon road for example.    It may be said that this clause is
merely another statement of the proposition that it is negli-
gence not to look and listen—and it may be asked what other
steps can one take ?

When one approaches a railroad track and observes that
there is nothing to obstruct his view, and that there are no
other sounds to prevent hearing an approaching train, he may
rationally conclude it is safe to cross, and in such case he

would not be required to make a more particular examination.

And even if he were to see a train coming, yet at such a distance as to make it apparently safe to cross ahead of it, he may prudently do so, though he would not be justified in making the attempt if it were doubtful whether he could do so without risk; but when it is apparent that by reason of intervening buildings and freight cars a train might be coming and not visible to him, and that by reason of other noises he might not be able to distinguish the sound of the train, then as a matter of common prudence he ought to take some special care for his safety and not content himself with the reflection that he neither sees nor hears a train.  He must know that there is danger and if he goes on as though there was no danger he can not be free from negligence.  This is all the jury were told by the instruction, when it is fully and fairly considered, and it is all they would understand in view of the evidence to which it was to be applied.

As above stated, the view was obstructed, and according to the proof one of the buildings was a grain elevator which was then in operation.

Here, then, was a situation where the train, if there was one, could not be seen, and perhaps it could not be heard, and yet no proper precaution was taken.

We quote from Hushong's testimony:

Q.  Now, you may tell whether you listened for any train there before you drove on the track, and whether you looked?  A.  We looked.  We didn't stop our team and listen, but then we looked for the train.

Q.  Did you hear any whistle blow, or any bell ring, or anything of that kind?  A.  No, sir.

Q.  You may tell if there was one of those elevators there running?  A.  The one next to the depot was running — the north elevator.

Q.  Was that on the railroad's right of way?  A.  I believe it is; I couldn't say for certain.

Q.  If the right of way is 100 feet on each side, state whether it would be on the right of way or not?  A.  Yes, sir; it would be.

Q. You may tell whether there were any cars standing there anywhere? A. The side track was full from the depot down to the road to the crossing where we started across.

Q. How near did they come to the wagon track where you crossed the railroad? A. They were down within twenty feet of the wagon road.

Q. From the depot down? A. Yes, sir.

Q. Now, you may tell how long you saw the cars before you were struck? A. Well, just as we drove across the side track my brother-in-law says, there is the train; and just as he went to pull up on the lines to say whoa, the train hit the team; that is the first we had seen or heard of it.

In view of the case made by the proof, we are inclined to hold no error was committed in giving this instruction.

But, as already stated, the jury found specially that the defendant was not guilty of a want of ordinary care. If this was so, then there could be no verdict for the plaintiff, and it was immaterial whether the deceased was exercising ordinary care or not. Therefore, even if the instruction was erroneous, the error was harmless in view of this special finding that the defendant was not negligent.

It is also objected that the court would not admit evidence offered by the plaintiff to show that the village officials, or some of them, had complained to the railroad company of the speed of this train. We think the evidence was properly excluded. The village board might have passed any ordinance on the subject within its lawful power, and so have controlled the rate of speed within the corporate limits, but had not done so.

If the customary speed of the train at that place was dangerous, the company was bound to know it without being so notified by the village officials, or any one else, and if it was not dangerous, no mere complaint would make it unlawful.

We find no error in the record, and the judgment will be affirmed.